UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | | |
|---|---|---|
| CHESTER A. HICKS | : | |
| | : | |
| Individually and as | : | |
| Class Representative, | : | CIVIL ACTION NO._____ |
| | : | |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| CAMPBELL SOUP COMPANY | : | |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

1. Plaintiff, Chester A. Hicks, brings this class action on his own behalf and on behalf of those similarly situated, against Defendant Campbell Soup Company ("Campbell's"), a corporation with its headquarters located in Camden, New Jersey and by way of complaint, hereby states:

## I.  NATURE OF THE COMPLAINT

2. This is a class action brought by Plaintiff on his own behalf and on behalf of those similarly situated against Campbell's.  Plaintiff seeks, on his own behalf and on behalf of those similarly situated, declaratory, injunctive and other equitable relief, compensatory and punitive damages, attorneys fees, and such other relief as may be necessary to secure to Plaintiff and the class the right to be free of employment discrimination based upon race.  Plaintiff and the class he seeks to represent bring this

1

civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, § 42

U. S. C. §§ 2000e *et seq.* and pursuant to Section 1981 of the Civil Rights Act of 1871, as

amended by the Civil Rights Act of 1991, 42 U. S. C. §1981 ("Section 1981").

Additionally, Plaintiff alleges claims of age discrimination pursuant to the Age

Discrimination in Employment Act of 1967, 29 U. S. C. §§ 621 *et seq.*

## II.   <u>JURISDICTION</u>

3.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 which

confers original jurisdiction upon this Court in a civil action to recover damages or to

secure equitable or other relief under any Act of Congress providing for the protection of

civil rights, and pursuant to 28 U.S.C. § 1331 which confers original jurisdiction upon this

Court in a civil action arising under the Constitution or laws of the United States.

Jurisdiction is also invoked pursuant to  42 U.S.C. § 2000e-5(f)(3) and 29 U.S.C. § 626(c)

as this is an action to secure the protection of and to redress deprivation of rights protected

by Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in

Employment Act of 1967.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

Campbell's has its headquarters, can be found, and conducts business in the District of

New Jersey.

5.  Plaintiff has fulfilled all of the jurisdictional requirements for filing this action

as follows:

    a.   On January 8, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

    b.   On August 4, 2006 EEOC issued a Determination in which it found that there was cause to believe that Campbell's violated Title VII of the Civil Rights Act of 1964, as amended with respect to Plaintiff's claim of racial discrimination in the failure to promote.

    c.   EEOC undertook efforts to conciliate the claim but was unsuccessful in doing so.

    d.   On April 2, 2009, EEOC issued a Right to Sue Letter to Plaintiff.

    e.   This action is filed within 90 days from Plaintiff's receipt of the right to sue letter.

## III.  THE PARTIES

### A.  PLAINTIFF

6. Plaintiff Chester A. Hicks is a 58 year old African-American citizen who resides in Houston, Texas. Plaintiff has been employed by Campbell's since 1985 and has held a position in sales during the entire time he has been employed. Plaintiff is currently employed by Campbell's in the entry level job position of Territory Manager. Although Plaintiff has had excellent evaluations, has been highly productive for Campbell's, and enjoys the respect and admiration of his co-workers and customers, Plaintiff has repeatedly been passed over for promotions for which he was highly qualified in favor of less experienced and less qualified White employees. In addition to being subjected to

discrimination on the basis of his race, Plaintiff has been subjected to discrimination on the basis of his age in that Campbell's has also favored younger employees over those 40 years of age and older in awarding promotions.

### B. DEFENDANT

7. Campbell's is a New Jersey corporation and maintains its corporate headquarters in Camden, New Jersey.

8. Campbell's is the largest soup company in the world. In the United States, Campbell's maintains close to a 70% market share and holds market-leading positions in Canada, Germany, France and Australia. Campbell's has 20 brands that each generate more than $100 million in annual sales. In addition to Campbell's, Campbell's Chunky and Campbell's Select Soups, Campbell's owns such brands as Pace and Prego sauces, V8 juices, Godiva Chocolates, and Pepperidge Farm breads, cookies and crackers. Campbell employs more than 24,000 people around the world and has global sales of almost $7 billion annually.

9. Campbell's corporate headquarters is responsible for its global network and administers common employment policies and practices for all of Campbell's domestic operations. Common policies and practices related to entry level jobs, salaries, promotions and compensation are produced and distributed by the Human Resources Division at Campbell's Camden, New Jersey headquarters and apply to all United States based personnel.

## IV.   FACTUAL ALLEGATIONS

10.   Chester Hicks was employed by Campbell's on May 8, 1985 in the entry level sales position of sales merchandiser.  Although the title of Mr. Hicks' job has changed over the years, the position he is currently assigned remains the entry level sales position at Campbell's.  As of 1996, the position was referred to as a Territory Manager job.  The title of the entry level sales position at Campbell's was again changed in August, 2004 to that of Retail Business Manager.

11.   The job description utilized by Campbell's for a Territory Manager since 2003 describes the job as follows:

> *This entry-level position is responsible for implementing Campbell's category strategies and tactics at the retail level. Positions are located throughout the country.  Reporting to a District Manager, the specific responsibilities  will include:*
>
> > *• Understand, sell and execute Category Business Plans and merchandising activities for customers.*
> >
> > *• Utilize Category Management principles in presentations to sell base and incremental activities at key customers.*
> >
> > *• Maintain an appropriate coverage discipline to ensure that plans are achieved.*
> >
> > *• Manage retail conditions to ensure competitively superior in-store presence on key retail priorities.*
> >
> > *• Understand customers retail systems, objectives and strategies; develop strong relationships with store management and supervisor/director levels.*
> >
> > *• Continue to build an understanding and expertise of category and brand dynamics.*

12.  The same job description for the Territory Manager position states that " The career path, while starting in sales, offers high potential candidates an opportunity to move through several functional assignments in order to develop general management capability." This promise of a career path through several functional assignments has been maintained for Campbell's White employees. However, Campbell's has only rarely and in unusual circumstances offered promotions to its African American employees. Campbell's African American employees in sales positions have not been deemed to be "high potential candidates" as only White employees have benefitted from a career path in sales at Campbell's.

13.  In 2001, Campbell's Human Resources Department, working with management, undertook a project to standardize job descriptions and basic job requirements for many of Campbell's sales positions. As a result, Campbell's began requiring or strongly preferring four-year college degrees for all new Territory Managers. No educational requirement for the position has ever been validated, and no undergraduate degree is necessary to perform the requirements of the job. Campbell's justification for the educational requirement at the time was that substantial work went into training Territory Managers after they arrived at Campbell's, and management wanted to try to capitalize on that investment by moving top performing Territory Managers into higher-level positions within sales. It was determined at the time that incoming candidates with a four-year degree, if successful in the Territory Manager position, were much more likely to be able to advance into higher-levels of management.

14.   No validation studies or studies of any kind were ever conducted by

Campbell's to determine if a college degree was a bona fide occupational qualification for

the Territory Manager position or any other position within the career path to higher level

positions within its sales force.  In fact, employees have performed well in both the

Territory Manager positions and the higher level sales positions without having a four-year

degree.  Nonetheless, Campbell's has utilized these non job-related educational

requirements and preferences in a way that has had a disparate impact on its African

American employees.  Campbell's has also utilized the college degree requirements or

preferences to justify its discriminatory treatment of African Americans within its sales

force.

15.   Plaintiff attended three years of college but did not obtain a degree.

Nonetheless, he has always performed extremely well as a member of Campbell's sales

force. Each year, Campbell's sets  goals for its Territory Managers and evaluates their job

performance against those goals.    Plaintiff has consistently  far surpassed the sales goals

set for him in all categories, frequently by percentages that are extraordinary. For example,

in his 2002 evaluation, Plaintiff's performance was rated as "significantly better than

expectations" and he exceeded his goals by 177% in the first half of the year and by 141%

in the second half of the year.  His supervisor wrote about him:

> Chester is currently the Point Person for Kroger-Houston.  He
> has assisted Mary Chitty, AE on Kroger, with many different
> key areas. . . .  He was recognized for his hard work by Mary
> Chitty with a You Make A Difference Award presented at our
> October Pod Meeting.  Recently, Chester assisted Mary and
> another TM in setting the first IQ Shelving Set in the

7

country–just another example of Chester going "above and beyond" in his duties as Point Person for Kroger-Houston.

In regards to Special Initiatives, Chester exceeded his objectives behind the New Item Speed to Shelf by having all new items on the shelf before 10/8/01. Chester also performed extremely well against our Special Display Contests. He won the Kroger LFE Contest representing Team Pacesetters last September. He also won the team's Olympic display contest with two of his displays gaining national exposure. He also placed 3rd on the team with his Splash Hang Ten display. Chester definitely sets the pace for the rest of the team with his creative, large and winning displays.

16.   In 2003, Plaintiff exceeded his goals in various categories by factors from

106% to over 261%. Campbell's written evaluation of Plaintiff states among other

glowing comments:

Chester has done exceptional work in the Territory Manger role. He has achieved 179% of his Standards IPG's, as will as 115% of his ACE IPG's. He has Grocers Supply Indirect Headquarter Account responsibilities as well. He manages Foodarama, Apple Tree, Sak N Save, and Food City. He is responsible for presenting upcoming promotions, Ad opportunities, new items, Secondary Display Vehicles, and shelving initiatives. Chester received 100% new item acceptance for all of FY '03 new items. He took advantage of Ad opportunities with all customers. These efforts resulted in Cinco de Mayo, Thanksgiving, Christmas, and Super Bowl Ads. Chester sold an astonishing 250 pallets to support the Foodarama Super Bowl Ad. In support of the upcoming Campbell's On The Go Launch, Chester sold 483 Chunky To Go Shippers, 213 Select To Go Shippers and 753 Soup At Hand Shippers. These are unbelievable results.

Chester also had much success with his Asian customer during the 1st half of FY '03. Working closely with the Grocers Supply CBM and Swanson Broth Brand Team, Chester was able to receive additional broth funding. His efforts resulted in

20,000 Swanson Broth cases. This is a major win for Chester
and Campbell Sales Company.

17. In this same evaluation, Plaintiff's supervisor wrote: "In many ways, Chester
has proven to be a leader on Team South Texas. His experience and generosity in sharing
his knowledge with other Territory Managers has had a positive impact on the team. He
maintains a positive perspective on the job at hand. He is a motivator and cheerleader. I
have counted on Chester to assist with the development of two new hires. He has the
respect and trust of all team members. Chester is a value to our team and Campbell Sales
Company."

18. From 1985 until 2002, Plaintiff had eleven different District Managers all of
whom were White. During that time and continuing until the present, the decision to
recommend a Territory Manager for promotion was left to the employee's District
Manager. In the early years, those decisions were made without any guidelines
whatsoever and promotions were awarded on the basis of a purely subjective, informal,
secretive method in which White managers selected favored White candidates in a process
that did not require job openings to be posted or objective criteria for promotion to be
announced or utilized.

19. As a result, Plaintiff saw a steady stream of White co-workers progress through
the ranks of Territory Manager, Account Manager, Account Executive, District Manager,
Regional Manager and beyond, while he and his African American co-workers remained
in entry level Territory Manager positions despite their years of experience and their
qualifications.

9

20.  In January 2002, Campbell's revised its guidelines for "Talent Review" as part
of its process for "Organization Resource Planning."  In these guidelines, which were
distributed to first line managers to be used in selecting "High Potential players" for
promotion, the supervisory personnel were advised in the Introduction : Employee
Profiles- A Foundation for a Talent Review as follows:

> "The talent review side of ORP (Organization Resource
> Planning) entails assessing the performance and potential of
> our people and then deciding on commensurate promotion,
> compensation and development action.  There is a fundamental
> truism to the process. People are different.  They have varying
> talents and skills.   They have different motives and values.  In
> some of the ways that people differ future leadership potential
> lurks.  In other words some people are more likely to succeed
> than others are.  To be an effective manager in the ORP
> process you have to accept that some people have it and others
> don't. More importantly you have to communicate such
> messages clearly and courageously.
>
> The talent review process requires that you differentiate your
> people.  Some are going to get more development than others
> do and some will get different kinds of development.
>
> This begs the question "shouldn't we be developing all of our
> people?"  The answer is yes.  We should be developing all our
> people all of the time.  All associates should have things like
> developmental tasks to enrich their skills set.  We have tuition
> support programs across the globe.  We are enabling broader
> access to training and our tape rental libraries and the like, plus
> every employee should be getting regular feedback through the
> performance management system.  That said, some will and
> should have more resources applied to them than others.

21.  Attached to this Introduction were instructions for developing an Employee
Profile and "Performance and Potential data" on employees.  Supervisors were instructed
that "Collecting biographical data is essentially the responsibility of the HR Generalists,

while Performance and Potential Calls are driven by the manager with input for the employee and HR to form a consensus view of the person." Biographical data included the person's job title, date in the job, job level, salary, education, work history and language skills.

22. With regard to "Performance and Potential data," supervisors were instructed that "Managers will make calls on the Performance and Potential data." They were further instructed that 'Ideally, this will involve getting the employee's input and perspective on their skills, desired career steps and their relocateability prior to developing the Profile."

23. What resulted from the revised "Talent Review" guidelines was a promotional process that was every bit as subjective and discriminatory as the existing promotional process. Under both the old and new processes, the decision to promote was left to the subjective whim of almost exclusively White supervisors who were empowered to "make the calls" on the promotional potential of the employees under their supervision.

24. On numerous occasions Plaintiff inquired of his supervisors regarding what steps he should take to secure a promotion. Information was not forthcoming, and Plaintiff continued to see White employees, some of whom he had trained, promote to higher management level positions at Campbell's while he and other African American employees remained in the lowest level sales positions.

25. In 2002, Plaintiff received his third Merit Award, the highest award given to members of Campbell's sales force. According to official company documents, "The Merit Award program is special recognition for exceptional accomplishment. For

example, an outstanding sales or merchandising achievement is one which shows initiative, ingenuity, resourcefulness and careful planning...to be considered for a Merit Award, customer service must also be unusual and outstanding and result in better trade relations."

26.     Although qualified to be the recipient of three Merit Awards, Plaintiff has not been able to obtain a promotion.  In contrast, one of Plaintiff's White co-workers, Heather Downes, received her second Merit Award in May 2002, and was promoted shortly thereafter.  Another White employee, Rick Stelzer, who had been with Campbell's approximately one year also received a promotion after receiving a Merit Award.

27.     Within the two year period prior to Plaintiff's having filed charges of discrimination with the EEOC, many promotions for which Plaintiff was highly qualified were awarded to White employees of Campbell's.  However, Plaintiff was not even afforded the opportunity to interview for these promotions.  For example, in September 2002, the position of Account Executive for the Grocers Supply account in Houston, Texas became available.  Although Plaintiff had worked with that account for the previous 15 years, he could not secure an interview for the position.  The position instead was given to a White employee who had previously been laid off from Campbell's.  This employee, Pam Raanes, has since been promoted numerous times through the management ranks.

28.   Another White employee, Claudine Hollman, became Plaintiff's supervisor and  was also promoted numerous times through the management ranks, while Plaintiff has remained in the entry level Territory Manager position.

29.  In the relevant time frame, Campbell's has announced significant numbers of promotions for which Plaintiff and members of the class he seeks to represent were qualified, but African American employees were not selected for any of these positions which instead were awarded to less experienced White employees who had considerably less  time in rank at Campbell's.

30.   In September 2003, Plaintiff learned for the first time that a position of Territory Manager II existed at Campbell's.  This position was not publically announced or discussed and was awarded to favored, White employees of the company.  In essence, the job responsibilities of Territory Manager II were the same as those of Territory Manager; however, Territory Manager  was a Level 14 position while Territory Manager II was a Level 16 position.  Therefore, because the Territory Manager II was afforded the higher job level, it brought with it an increase in pay that was not afforded to those holding the lower level Territory Manager position.  Prior to 2003, there were no criteria whatsoever for awarding an employee a Territory Manager II position, and those positions were awarded in a racially discriminatory manner.

31.  In 2003, an attempt was allegedly made to "create transparency around the criteria, process and decisions for career progression levels."  For the first time, the position of Territory Manager II was publically acknowledged, and Campbell's African American Territory Managers became aware that the position existed.  At the time that Plaintiff learned about the higher level Territory Manager II position, he was for the first time under the supervision of an African American District Manager.  This African

American District Manager, Brandon Hamm, had been employed only a short time at Campbell's and was 29 years old at the time he became Plaintiff's supervisor.

32.   Brandon Hamm was surprised to learn that Plaintiff had never been promoted to at least a Territory Manager II, and he recommended Plaintiff for an increase to a Level 16 position.  The recommendation was denied on the basis that Plaintiff had not consistently earned a performance rating of a "4".  On October 15, 2003, Hamm sent Plaintiff a memorandum indicating that Plaintiff had received a "4" rating in 2003 and in 2002 but had received a "3.5" rating in 2001.  Hamm wrote "Unfortunately you have not received a 4 rating on a consistent basis."  However, an earlier memorandum sent to Plaintiff by Hamm indicated that Plaintiff had in fact received a "4" in his 2001 performance review and not the 3.5 rating subsequently used to deny the promotion.

33.   After Plaintiff filed a charge of discrimination with the EEOC, he was promoted to the Level 16 position.  Pam Williams, an African American employee of Campbell's was also given the Level 16 Territory Manager II position.  At the time she obtained the secretive and discriminatory position of Territory Manager II, she had been a Territory Manager for 12 years.

34.   Once Plaintiff learned that the Territory Manager II position existed, he asked some of his White co-workers if they had heard of the position.  One of them advised him that he had been awarded a Territory Manager II position some 5 years previously and was surprised to learn that Plaintiff had not  obtained the higher level years earlier.

35. Although Plaintiff and the members of the class he seeks to represent were not made aware that the Territory Manager II position existed, it was from this Territory II position that promotions to the position of Account Manager were made. One of the factors leading to promotion from Territory Manager II to an Account Manager position was the completion of an Advanced Training Program. An individual who had complete an Advanced Training Program was eligible to promote from a Territory Manager II position with less than two (2) years experience at Campbell's. However, a promotion in less than two years was considered the exception.

36. At the time he became aware of the Territory Manager II position, Plaintiff had 18 years of Campbell's experience. He now has more than 24 years of Campbell's experience and excellent reviews. He has trained other Territory Managers and has been highly profitable for Campbell's, yet he remains in a Territory Manager II position.

## IV.  CLASS ACTION ALLEGATIONS

37. Paragraphs 1 through 35 above are incorporated herein by reference.

38. Plaintiff brings this action on his own behalf, and on behalf of a class of persons under Rule 23 (a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

39. Plaintiff seeks to represent a class comprised of:

> All persons of African-American descent employed by
> Campbell's in salaried sales positions in the United States at
> any time from July 7, 2003 to the present.

Plaintiff reserves the right to amend the definition of the Class following discovery.

40. The individuals in the class are so numerous that joinder of all members is impracticable. Plaintiff estimates that there are over sixty (60) members of the class.

41. There are questions of law and fact common to the class that predominate over any questions affecting only individuals. Among these common questions are:

a. Whether Campbell's actions violate federal civil rights laws, in particular Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 1981;

b. Whether Campbell's maintains written and unwritten policies and practices for determining promotions that discriminate against the class on the basis of race;

c. Whether there are statistically significant disparities between the promotions awarded to African-American employees and the promotions awarded to similarly situated White employees, sufficient to permit an inference of intentional discrimination;

d. Whether Campbell's practices for determining promotions have a disparate impact on African-American employees in sales positions;

e. Whether Campbell's maintains policies and practices for determining compensation that discriminate against the class on the basis of race;

f. Whether there are statistically significant disparities between the compensation awarded to African-American employees and the compensation awarded to similarly situated White employees, sufficient to permit an inference of intentional discrimination;

g. Whether Campbell's has failed to monitor its human resources and employment policies and practices adequately to ensure equal employment opportunity;

    h.      Whether Campbell's senior management had knowledge of racial disparities in entry level sales positions, promotion, compensation and the organization's diversity performance, and what, if any, actions were taken as a result of that knowledge;

    i.      If discrimination is found, whether injunctive relief, including changes to company wide policies and practices is needed to adequately remedy past and present discrimination against the class and prevent future discrimination against the class;

    j.      Whether Campbell's conduct constitutes a pattern and practice of discrimination against the class justifying an award of lost wages, benefits or other similar relief to the class; and

    k.      Whether Campbell's conduct constitutes a pattern and practice of discrimination against the class justifying an award of compensatory and punitive damages to the class.

42. The claims of Plaintiff are typical of the claims of the class. Plaintiff alleges that he, like the class, has been discriminated against on the basis of his race in promotions, compensation and benefits.

43. Plaintiff will fairly and adequately represent the interests of the class. Plaintiff has retained skilled and experience counsel to represent him in this class action.

44. Campbell's has acted or refused to act on grounds generally applicable to the class, making final injunctive or declaratory relief appropriate.

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

46. Issues common to the class predominate over individual issues.

## V.   ALLEGATIONS OF CLASS WIDE DISCRIMINATION

47. Paragraphs 1 through 46 are incorporated herein by reference.

48. Campbell's has engaged in a pattern and practice of discriminating against Plaintiff and the class comprised of African-American employees of Campbell's who hold salaried sales positions. Campbell's has subjected Plaintiff and the class to discrimination in the following manner:

### A.   Discrimination in Promotions.

49. Although the normal path of progression from the entry level position of Territory Manager is by promotion into the positions of Account Manager, Account Executive, District Manager, Regional Manager and beyond,  Plaintiff and the class he seeks to represent have been and continue to be passed over for promotions for which they are highly qualified, while White employees with fewer qualifications and less experience promote through the ranks.  Many of Campbell's long term African-American employees in sales positions, including Plaintiff, remain in the entry level position of Territory Manager even though they have been employed for many years and have received good performance evaluations.  More recently hired African American employees in Territory Manager positions remain in that rank longer than White employees and are denied promotions in favor of less qualified White employees.

### B.   Glass Ceiling and Glass Wall.

50. Those very few African-American employees of Campbell's who do promote from entry level positions are prevented from further advancement due to a "glass ceiling"

which prevents equal opportunity for promotion for Plaintiff and the class he seeks to represent. Within the relevant time frame of this class action, there has not been an African-America salaried level sales person promoted through the ranks of the sales force who has advanced higher than an Account Manager.

51. At one point in time prior to the relevant time frame, Campbell's employed an African-American District Manager. However, only other African-American employees reported to the African-American District Manager. During a short period of time, Campbell's hired an African-American Director of Human Resources. This African-American Director of Human Resources admitted to Plaintiff that both a Glass Ceiling and a Glass Wall exist at the company which prevent African-Americans from advancing. While he was at the company, the African-American Director of Human Resources appointed an African-American as an Account Executive. In this position the African-American Account Executive had approximately 10 White employees who reported to him. This was the first time that an African-American had held the position of Account Executive. Within months of this promotion, Campbell's decided to eliminate this position and offered the African-American who had held the position a position three levels below the Account Executive position. The African American employee resigned from the company. Within three months of his resignation, Campbell's reinstated the Account Executive position. The new Account Executive was White. Shortly thereafter, the African-American Director of Human Resources left the company.

52.  At times relevant to this civil action, jobs were not posted, and African American employees learned about job vacancies when they received announcements about the White employees who had been awarded the jobs.

53.  In November or December 2003, Campbell's instituted its Career Gateway program in which certain, but not all, jobs were posted electronically.  Many of the electronic job postings within the career path for Plaintiff and the class he seeks to represent indicate that educational requirements such as a four-year degree or a graduate degree are either required or preferred for the jobs listed.  These unvalidated and unnecessary, non-bona fide educational requirements have deterred Plaintiff and the class he seeks to represent from applying for many jobs for which they are highly qualified.

54.  In some instances, members of the class did seek to apply for jobs that were posted.  However, they were not permitted to interview for the posted jobs for which they applied.  Many well qualified members of the class Plaintiff seeks to represent, having seen that advancement within the ranks of sales positions at Campbell's were denied to them on the basis of their race, left Campbell's and have obtained advancement with other companies that do not discriminate on the basis of race.

55.  In some instances, long term African American employees of Campbell's have not applied for jobs that are posted because they have seen that other African Americans who have obtained a promotion were shortly thereafter terminated from their employment with Campbell's.

56. Despite the electronic posting of vacancies, the single most important factor for promotion in sales positions at Campbell's remains the subjective decision-making of an employee's supervisor as to whether that employee has "potential". This subjective promotional system has resulted in a disparate impact on African American employee's of Campbell's and serves as a ready mechanism for discriminatory treatment of those employees on the basis of their race.

### C.   Discriminatory Compensation.

57. Compensation in Campbell's sales positions can be adversely affected by job assignment not only within job title, but also within territories and accounts. African-American sales personnel are typically assigned to smaller accounts in remote locations which adversely affects their compensation.

58. Although job levels are assigned to the various positions within the sales force, there is a salary range within the job level which is within the discretion of the employee's supervisor. African American employees in sales positions at Campbell's are compensated at the lower rates within the job levels to which they are assigned.

59. The award of merit increases is also within the discretion of Campbell's predominantly White managerial employees. Because White employees are compensated at higher salary levels, any percentage of salary merit increase compensates those White employees at a higher rate than African American employees receive. The decision as to what percentage of salary to award as a merit increase is also within the discretion of the

21

predominantly White supervisors and, as a result, African American employees receive lower percentage increases than do their White co-workers.

60. As is discussed above, for many years continuing into the relevant time frame of this class action, Campbell's utilized a secret job classification of Territory Manager II to better compensate its White employees. African American employees were not afforded the same level of compensation even though they were performing the same job duties as their White counterparts. Plaintiff and the class he seeks to represent were disproportionately confined to the Territory Manager position at a job level 14, while White employees were disproportionately assigned to the Territory Manager II position at a job level 16.

### D.   Lack of Oversight or Monitoring of Discrimination.

61. Although under a duty not to permit Campbell's employees to be the victims of discrimination in the terms and conditions of their employment, Campbell's higher management personnel have not properly monitored Campbell's employment policies and practices to insure that the company's promotion, pay, and performance policies are non-discriminatory. As a result, Plaintiff and the class he seeks to represent have been subjected to discrimination on the basis of their race.

### E.   Pattern and Practice of Discrimination

62. The discrimination inflicted upon Plaintiff and the class he seeks to represent is not the result of isolated incidents but rather is part of a pattern and practice of discrimination that exists throughout the company and affects not only Plaintiff, but the

22

entire class. Plaintiff and the class have been subjected to repeated and continuing

violations of the law which entitles them to be free from discrimination in the workplace.

63. As a proximate result of the actions and inactions of Campbell's with regard to

the discrimination on the basis of race described above, Plaintiff and the class he seeks to

represent have been and continue to be denied promotions, compensation and benefits, and

they have also suffered   extreme humiliation, embarrassment and emotional distress.

64. Campbell's management level employees are aware of Campbell's

discrimination against African-Americans, but have failed to take adequate measures to

prevent or remedy it.   Despite knowledge by senior management that the policies and

practices of the company result in discrimination against the company's African-American

employees in sales positions, Campbell's has not taken any steps to remedy the situation.

To the contrary, Campbell's written and unwritten policies and practices allow supervisors

to essentially handpick candidates for available positions and make promotion decisions

on the basis of highly subjective criteria. This system prevents qualified African-

Americans from competing equally for promotions.  Campbell's is aware of the

discriminatory aspects of its system but has failed to effectively remedy the system's

discriminatory effects.

## VI. **CAUSES OF ACTION**

65. This is a proceeding for back pay, front pay, injunctive and affirmative relief,

compensatory and punitive damages, counsel fees and such other relief as may be

necessary to secure to Plaintiff and the class he seeks to represent the right hereafter to be

free of employment discrimination based upon race. Additionally, Plaintiff individually seeks back pay, front pay, injunctive and affirmative relief, compensatory and punitive damages, liquidated damages, counsel fees and such other relief as may be necessary to secure to Plaintiff the right hereafter to be free of employment discrimination based upon age.

## COUNT I.
### RACE DISCRIMINATION PROHIBITED BY TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964

66.   Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

67.   The aforementioned acts of Campbell's are in violation of Title VII of the Civil Rights Act of 1964, as amended and constitute unlawful discrimination against Plaintiff and the class he seeks to represent on the basis of race.

68.   Campbell's has intentionally and purposefully discriminated against Plaintiff and the class he seeks to represent in violation of Title VII by denying them promotions and other career advancement based upon race, by compensating them less than comparable White employees and by denying them equal opportunity in their employment.

69.   As a result of the above described acts, omission, policies and practice pursued by Campbell's, Plaintiff and the class he seeks to represent have been limited, segregated, classified, and discriminated against in ways which deprive them of income and earning capacity and otherwise adversely affect their status as employees because of their race in violation of Title VII.

70.    As a direct and proximate result of Campbell's unlawful discriminatory actions, Plaintiff and the members of the class have suffered and will continue to suffer substantial damages, including but not limited to, lost wages and commissions, employee benefits, retirement benefits, emotional distress, anguish, humiliation, embarrassment and physical and mental injuries.

71.    The acts and omissions of Campbell's in discriminating against Plaintiff and the class he seeks to represent because of their race were intentional, purposeful, malicious, and in reckless disregard of the federally protected rights of Plaintiff and the class he seeks to represent, thereby justifying an award of punitive damages pursuant to Title VII.

## COUNT II.

## RACE DISCRIMINATION UNDER 42 U.S.C. §1981

72.    Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

73.  Campbell's has intentionally discriminated against Plaintiff and the class he seeks to represent on the basis of race in violation of 42 U.S.C. § 1981 by a pattern and practice of denying promotions and other career advancement to qualified African-Americans in salaried sales positions and by compensating Plaintiff and the class less than comparable White employees.

74.    As a result of the above described acts, omission, policies and practice pursued by Campbell's as alleged above, Plaintiff and the class he seeks to represent have

been limited, segregated, classified, and discriminated against in ways which deprive them of income and earning capacity and otherwise adversely affect their status as employees because of their race in violation of 42. U.S.C. § 1981.

75.   As a direct and proximate result of Campbell's unlawful discriminatory actions, Plaintiff and the members of the class have suffered and will continue to suffer substantial damages, including but not limited to, lost wages and commissions, employee benefits, retirement benefits, emotional distress, anguish, humiliation, embarrassment and physical and mental injuries.

76.   The acts and omissions of Campbell's herein alleged in discriminating against Plaintiff and the class he seeks to represent because of their race were intentional, purposeful, malicious, and in reckless disregard of the federally protected rights of Plaintiff and the class he seeks to represent, thereby justifying an award of punitive damages pursuant to 42. U.S.C. § 1981.

## COUNT III.

## AGE DISCRIMINATION IN EMPLOYMENT

77.   Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

78.   The aforementioned acts and omissions of Campbell's are in violation of the Age Discrimination in Employment Act and constitute unlawful discrimination against Plaintiff on the basis of his age.

79.   Campbell's has intentionally and purposefully discriminated against Plaintiff in violation of the ADEA by compensating him less than comparable younger employees and by depriving him of promotions, salary, and benefits based upon his age.

80.   As a result of the above described acts, omissions, policies and practices pursued by Campbell's, Plaintiff has been limited, segregated, classified and discriminated against in ways which deprive him of income and earnings capacity and otherwise adversely affect his status as an employee because of his age in violation of the ADEA.

81.   As a direct and proximate result of Campbell's unlawful discriminatory actions against him, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to lost wages and commissions, employee benefits, retirement benefits, emotional distress, anguish, humiliation, embarrassment, and physical and mental injuries.

82.   The actions of Campbell's were wilful and taken with reckless disregard of Plaintiff's rights thereby warranting an award of liquidated damages pursuant to the ADEA.

## VI.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiff and the class he seeks to represent respectfully request that this Court grant the following relief:

1.   Certify this case as a class action;

2.   Enter a judgment that Campbell's acts and practices as set forth herein are in violation of the laws of the United States;

3. Enter preliminary and permanent relief enjoining the discriminatory conduct necessary to end Campbell's discriminatory practices and prevent current and future harm to Plaintiff and the class;

4. Award Plaintiff and the class lost wages, including back pay, front pay, and lost benefits, and including, without limitation, any lost benefits that would otherwise have been included in the 401(k) plans of Plaintiff and the class, which resulted from the discrimination;

5. Award Plaintiff and the class compensatory and punitive damages;

6. Award Plaintiff the costs of this action including the fees and costs of experts, together with reasonable attorneys' fees; and

7. Grant Plaintiff and the class such other and further relief to which they may show themselves to be entitled.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

**SIDNEY L. GOLD & ASSOCIATES, P.C.**

BY: _____
SUSAN R. WEXLER, ESQUIRE
TRACI M. GREENBERG, ESQUIRE
1835 Market Street, Suite 515
Philadelphia, Pennsylvania 19103
215.569.1999
*Attorneys for Plaintiff, Chester A. Hicks,*
*Individually and as Class Representative*

Dated:        June 26, 2009